UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHAUN R. DILLON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security Administration,<br><br>　　　　　　　　　　Defendant. | Case No. 3:17-cv-00597-LRH-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF No. 14 |

　　　This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

　　　Before the court is Plaintiff's Motion for Summary Judgment. (ECF Nos. 14, 14-1.) The Commissioner filed a Cross-Motion to Affirm and Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Reversal and/or Remand. (ECF No. 15.) Plaintiff filed a reply. (ECF No. 16.)

　　　After a thorough review, the court recommends that Plaintiff's motion be granted; the Commissioner's cross-motion be denied; and, the matter be remanded for further proceedings for the reasons set forth in this Report and Recommendation.

## **I. BACKGROUND**

　　　On May 9, 2013, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning March 1, 2013. (Administrative Record (AR) 50, 108-109, 138-139, 230-240.)[1] The applications were denied initially and on

---

[1] Plaintiff suffered an industrial injury leading to lower back problems in 2002. He was previously found

reconsideration. (AR 140-144, 149-150, 152-162.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 166-68.) ALJ Janice Shave held a hearing on November 13, 2015. (AR 40-76.) Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On March 2, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 16-31.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-4.)

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ's finding that Plaintiff could perform a limited range of sedentary work, with the use of a cane *or* walker is not supported by substantial evidence because while Plaintiff historically needed a cane to ambulate due to an antalgic gait, he was prescribed a walker over a cane in December 2014; (2) the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's testimony; and (3) to the extent the VE testified, and the ALJ adopted the conclusion, that Plaintiff could perform the job of addresser (Dictionary of Occupational Titles (DOT) 209.58-010), Plaintiff cited evidence on the Social Security Administration (SSA) website that many VEs conclude that the occupation of addresser no longer exists as described in the DOT, and is obsolete; and (4) the other occupations the VE testified Plaintiff could perform do not exist in significant numbers.

## II. STANDARD OF REVIEW

**A. Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

---

disabled and eligible for Social Security benefits. There was a continuing disability review, and Plaintiff failed to appear for the hearing. The ALJ issued a decision denying benefits. Plaintiff appealed and the Appeals Council denied the appeal. Plaintiff then commenced this new application for benefits with a protected filing date of May 9, 2013, with an amended alleged onset date of March 1, 2013, which is the application pertinent to this action. (*See* AR 43.)

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

///

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is

what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements,

1 and there are three separate tables, one for each category: sedentary work, light work, and medium
2 work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of
3 the numbers of unskilled jobs that exist throughout the national economy at the various functional
4 levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find
5 work, including the claimant's age, education and work experience. *Id*. For each combination of
6 factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the
7 national economy in that category. *Id*.

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through September 30, 2016, and had not engaged in substantial gainful activity since the alleged onset date of March 1, 2013. (AR 21.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: chronic low back pain with right lower extremity radiculopathy, epilepsy, obesity, and major depressive disorder. (AR 22.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 22.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform sedentary work, as defined in 20 C.F.R.§ 404.1567(a) and 416.967(a), except he was limited as follows: he requires the use of a walker or cane for any periods spent standing or walking; he can never engage in foot control operations; he can never climb ladders, ropes, scaffolds or stairs, but can occasionally climb ramps; he can never kneel, crouch or crawl, but can occasionally stoop and balance with a handheld assistive device; he cannot drive or walk in uneven or cluttered surfaces; he must avoid

1    all exposure to unprotected heights, hazardous or moving machinery, explosives and firearms; and,
2    he can understand, remember and carry out simple instructions. (AR 25.)

3           The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 29-
4    30.)

5           At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age,
6    education, work experience and RFC, there were jobs that exist in significant numbers in the
7    national economy that Plaintiff could perform, including: addressor (DOT 209.587-010)
8    (sedentary; SVP 2; 22,000 jobs nationally); lens inserter (DOT 713.268-026) (sedentary; SVP 2;
9    10,000 jobs nationally); and assembler (DOT 734.687-074) (sedentary; SVP 2; 10,000 jobs
10   nationally). (AR 31.) As a result, the ALJ found Plaintiff not disabled from March 1, 2013, through
11   the date of the decision. (AR 31.)

**B. The ALJ's Finding that Plaintiff Could Perform a Limited Range of Sedentary Work using a Cane *or* Walker for any Time Spent Walking or Standing**

       Plaintiff argues that the ALJ erred in finding Plaintiff could perform a limited range of sedentary work using a cane *or* walker when the evidence reflected that as of December 2014, Plaintiff needed a walker, and not a cane.

       Plaintiff argues that according to Social Security Ruling (SSR)[2] 96-9p, the occupational base for an individual who must use an assistive device for balance because of significant involvement in both lower extremities may be significantly eroded, and when both hands are occupied or when balance is an issue (such as when one is using a walker), the ALJ must consult a vocational resource to make a judgment concerning the ability to make adjustment to other work. Plaintiff asserts that the ALJ failed to do so when she allowed the VE to assume Plaintiff always had a choice in using a cane or walker. Put differently, Plaintiff contends that the record does not reflect whether an individual that must use a walker can engage in the work identified by the VE.

///

---

[2] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

The Commissioner argues that the treatment records from Dennis G. Patterson, D.O., to which Plaintiff refers, do not contain an opinion Plaintiff medically required a walker, and instead, establish that Dr. Patterson prescribed a walker because Plaintiff reported a walker was helpful.

Plaintiff suffered an industrial injury in 2002 and was treated through worker's compensation. Eventually, he underwent a functional restoration program in 2005 and 2006, which included physical therapy, occupational therapy, behavioral medicine and medical treatment. (AR 814-16.) He was diagnosed with multilevel lumbar disk disruption with diskogenic back pain and right lower extremity radicular leg pain. While he used a cane early for assistance ambulating, he stopped using it during the course of the functional restoration program. (AR 805-11.)

Plaintiff complained of low back pain again in 2008, and was seeing Paul Kaplan, M.D., of Rehabilitation Management Systems, Inc. (AR 400.) While he may have been using a cane prior to this time, the first reference the court came across that indicates Plaintiff was walking with a cane appears to be at an appointment with his neurologist where he was being treated following a seizure on November 22, 2010. (AR 478-79.) The neurologist noted he reported an exacerbation of his back pain and was walking with a cane. When he saw neurology again on May 26, 2011, it was noted that he was walking with a cane. (AR 400- 443, 476-77.) On November 10, 2011, Dr. Kaplan noted Plaintiff could not stand for more than twenty minutes at a time without a rest period, but there was nothing stated regarding a mobility device. (AR 442-43.)

When Plaintiff transferred to a new provider in May of 2012 (Darin Olde, NP, through Andrew Pasternak, M.D.), it was noted that his gait was affected by a limp and he was walking with a cane. (AR 458-59.)

He began seeing Michael M. Salas, M.D. (physiatry/pain medicine of Tahoe Spine and Pain Care) on June 4, 2012. (AR 552-54.) Dr. Salas noted that Plaintiff had an antalgic gait, with the use of a cane. (AR 553.) The use of the cane was noted in his monthly visits between June 2012 and January 2013. (AR 522, 525, 528, 531, 534, 537, 540, 543, 546, 549.)  On March 26, 2013, the notes state that Plaintiff's gait was antalgic *without* the use of a cane, but then the notes also state he was using a cane for ambulation as needed. (AR 519.) In April through September 2013, his gait was indicated to be antalgic with a mildly wide base, *without* the use of a cane; but again,

the notes also state that he used a cane to assist with ambulation as needed. (AR 501, 504, 507, 510, 513, 516.)

In an adult function report dated September 3, 2013, Plaintiff reported that he used a cane and walker to aid in walking and so that he could walk straight. (AR 291.)

When Plaintiff was examined by Dr. Richard Gasparre for the Social Security Disability Exam on October 1, 2013, he reported that he used a cane for support. (AR 563, 565.) When Plaintiff underwent his mental status examination on October 11, 2013, it was also noted he was using a cane. (AR 569.)

In an adult function report Plaintiff filled out in December 2013, Plaintiff indicated that he used a cane to prevent him from falling down due to weakness in his right leg and to aid in walking straight. (AR 316.)

Plaintiff then began seeing Jeffrey S. Zollinger, D.O., of Nevada Advanced Pain Specialists, in January 2014. (AR 591-94.) At that time, he was using the single point cane. (AR 591.) He had an antalgic gait. (AR 593.) Plaintiff reported that his pain had been of the same character and he had not had any progressive weakness since his last MRI in 2009. (AR 593.) His medications were continued and he was referred to pain psychology. (AR 593.) He reported worsening radicular pain, but there is no notation concerning the use of a cane. (AR 590.) On March 11, 2014, he presented to Dr. Zollinger using a single point cane. (AR 585.) He indicated increased pain after his medication adjustment. (AR 585.) At this visit, Plaintiff requested a prescription for the use of a cane, which Dr. Zollinger indicated he would do, and stated: "Hopefully, with the help of pain psychology we can also begin to wean from gait assistive devices." (AR 587.) His records indicate that he continued use of the cane in his remaining visits with Dr. Zollinger through June 2014. (AR 699, 703, 707.)

On July 9, 2014, Plaintiff began seeing Dennis Patterson, D.O., who was also in Dr. Zollinger's office. (AR 695-98.) Dr. Patterson noted Plaintiff's use of the cane through October 2014. (AR 683, 687, 691, 695.) At his November 25, 2014 appointment with Dr. Patterson, Plaintiff said that he "would like to have a walker." (AR 678-682.) Dr. Patterson noted that he would write a script for the walker that day. (AR 682.) There is a prescription for a

front wheel walker for balance and worsening lower extremity pain dated November 25, 2014, and signed by Melissa Delamora, APN. (AR 640.)

Dr. Patterson noted on January 28, 2015, that Plaintiff reported he had been using the walker and it had been helping. (AR 672.) This same notation is contained in the report from his February 25, 2015 and March 25, 2015 appointments. (AR 662, 667.) During his April 22, 2015 visit with Dr. Patterson, he reported that he had worsening low back and radiating left lower extremity pain, and was starting to become incontinent. (AR 657.) He stated that his walker was broken, and Dr. Patterson agreed to write a script for a new one. (AR 657.) The same notations are contained in the notes from the May 20, 2015 appointment. (AR 652.) When he saw neurology on June 11, 2015, it was indicated that he was walking with a rolling walker in a stable fashion. (AR 712.) On June 17, 2015, Dr. Patterson stated that he had not gotten his walker and had issues with worker's compensation on this, and Dr. Patterson prescribed a walker. (AR 647.)

On July 29, 2015, a prescription for a walker was again contained in the orders. (AR 742.)

Plaintiff testified at the hearing that he used a walker every day. (AR 57.) He testified that he had a cane, but he uses the walker over the cane because of limited mobility after he started having radiating pain in both legs. (AR 62.) He testified that he experienced numbness and weakness in both legs, which caused him to stumble more and fall to the ground, and the walker helped to prevent that. (AR 62.) He testified that he cannot stand without the walker. (AR 64.)

The ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work, and would need the use of a cane *or* walker for any periods spent standing or walking. (AR 25.)

While an RFC that an individual can perform less than the full range of sedentary work does not necessarily mean an individual is disabled, such an RFC "reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." Social Security Ruling (SSR) 96-9P, 1996 WL 374185, at * 1 (July 2, 1996). In such a case, "[t]he RFC assessment must include a narrative that shows the presence *and degree* of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment." *Id.* at *5 (emphasis added). "An accurate accounting of an individual's abilities, limitations, and restrictions is necessary to determine the extent of erosion of the occupational

base, the types of sedentary occupations an individual might still be able to do, and whether it will be necessary to make use of a vocational resource." *Id*. at * 6.

The ALJ did not specifically address the fact that while Plaintiff used a cane for mobility in the past, in 2014 and 2015 he was only using a walker. Plaintiff attributes this to the fact that he began experiencing radicular pain in *both* legs starting in 2014, which caused further balance issues that the walker helped to alleviate. This is substantiated by the medical records which reflect that while Plaintiff originally reported back pain radiating to the right lower extremity, in 2014 he complained of worsening radicular pain into the left lower extremity as well, which also corresponds with the request for the walker. (*See* AR 643-682, 726-37.)

The walker was prescribed, indicating that it was for balance and worsening lower extremity pain, and his physician subsequently noted that it was helping. Plaintiff testified that he could no longer use the cane because of these issues, but the RFC assigned by the ALJ and the hypothetical posed to the VE stated that the claimant needed the assistance of a cane *or* a walker when standing or walking. While the ALJ noted the use of a cane and prescription for a walker, there was no discussion with the VE or in the decision itself regarding whether Plaintiff required the use of a walker exclusively, and if so, whether he could still perform the jobs identified by the VE. Neither the VE nor the ALJ clarified whether Plaintiff would always have access to one or both assistive devices.

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." SSR 96-9P, 1996 WL 374185, at * 7. "The adjudicator must always consider the particular facts of the case." *Id*.

Here, there is medical evidence in the record of a need for a walker since it was prescribed by Plaintiff's treating physician, who noted it was helpful, but there is no other specific information regarding the circumstances for which it is needed, and the ALJ did not develop the record in this regard.

1    SSR 96-9P specifically comments that "the occupational base for an individual who must
2 use such a device for balance because of significant involvement of both lower extremities … may
3 be significantly eroded." *Id*. Neither the ALJ's discussion with the VE at the hearing, nor the
4 decision itself, discuss the use of the walker because of balance issues arising from the extension
5 of the radicular pain from one to both of Plaintiff's lower extremities, or the extent to which such
6 a finding might erode the occupational base. *See e.g. Garrison v. Colvin*, 759 F.3d 995, 1011 (9th
7 Cir. 2014) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)); *Magallanes v. Bowen*,
8 881 F.2d 747, 756 (9th Cir. 1989)) ("'The ALJ's depiction of the claimant's disability must be
9 accurate, detailed, and supported by the medical record.' … 'The testimony of a [VE] is valuable
10 only to the extent that it is supported by medical evidence' and has 'no evidentiary value if the
11 assumptions in the hypothetical are not supported by the record.'").

12    As a result, the court cannot conclude that the decision that Plaintiff could perform these
13 other jobs in the national economy is in fact supported by substantial evidence in the record.
14 Remand for further proceedings to explore this issue is appropriate.

15 **C. Claimant Credibility**

16    Plaintiff argues that the ALJ failed to articulate clear and convincing reasons for rejecting
17 Plaintiff's testimony. Specifically, Plaintiff argues that the ALJ did not set forth legally sufficient
18 reasons for finding Plaintiff less than credible with respect to his ability to sit for prolonged periods
19 of time.

20    The Commissioner contends that the ALJ properly considered Plaintiff's allegation he
21 could sit for only thirty to sixty minutes, and the ALJ gave Plaintiff's claims the benefit of the
22 doubt by assessing a restrictive RFC for a narrow range of sedentary work, and provided sufficient
23 reasons finding why the evidence did not support further limitations. The Commissioner argues
24 that the medical-opinion evidence, Plaintiff's treatment history, a lack of medical evidence, and
25 Plaintiff's activities of daily living established that Plaintiff retained a significant range of
26 functioning consistent with his RFC.

27    When he applied for benefits Plaintiff identified his sitting capacity as being between 30
28 and 60 minutes; standing for 15 minutes; and walking for 15 to 30 minutes, before his pain would

increase and he would have to change positions. (AR 285.) By November 2015, he could sit for 30 to 45 minutes; stand for 5 to 10 minutes; and could not stand or walk without a walker. (AR 64.)

The ALJ assessed Plaintiff as having the RFC to perform the sitting, standing and walking required of sedentary work, except that he needed the use of a walker or cane for any periods spent standing or walking. (AR 25.)

The full range of sedentary work requires an individual be able to sit for approximately six hours in an eight-hour workday, with a morning break, a lunch period, and an afternoon break at approximately two-hour intervals. SSR 96-9P, 1996 WL 374185, at * 6. If an individual is unable to do so, the unskilled sedentary occupational base is eroded, and the extent of the limitation is to be considered in determining whether the individual can adjust to other work. *Id*. "The fact that an individual cannot do the sitting required to perform the full range of sedentary work does not necessarily mean he or she cannot perform other work at a higher exertional level." *Id*.

The question is whether the ALJ set forth legally sufficient reasons for finding Plaintiff less than credible with respect to his statements concerning his ability to sit.

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:
> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotation marks and citations omitted) (emphasis original).

An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and

- 13 -

side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c), § 416.929(c).

Here, the ALJ noted Plaintiff's claims that he could sit for thirty to sixty minutes at a time, and that he must change positions due to increasing pain. (AR 25.) The ALJ went on to discuss his daily activities, which involved attending online college classes as he was able, watching television with family, reading, writing and studying, taking care of pets, driving a car, riding in cars, shopping in stores, and preparing breakfasts and lunch once or twice a day on a good day, and doing laundry. (AR 26.) The ALJ acknowledged his report that he had difficulty with personal care due to physical limitations. (AR 26.)

Next, the ALJ described Plaintiff's reported social activities, which included reading, watching television, role-playing games, and video games. (AR 26.) She mentioned that he reported his pain level and headaches determined whether he could do these activities. (AR 26.) He stated that he spent time with others in person, on the phone and on the computer, and tried to take lunch to his niece at school once a week. (AR 26.)

The ALJ then stated that Plaintiff testified at the hearing "consistently with his reported limitations and symptoms." (AR 26.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but stated that his statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible, citing the fact that he described daily activities that were not limited to the extent one would expect given his complaints of disabling symptoms and limitations, indicating he was more capable than alleged in the ability to perform basic sedentary work activities. (AR 26.) In addition, she stated that while the objective medical evidence supported the assertion that Plaintiff's impairments limited his ability to work, there was insufficient medical evidence to support his contention that his impairments prevented him from doing all work.

///

1    The court will now address whether these reasons (daily activities and objective medical evidence not supporting the extent of his claimed limitations) are supported by substantial evidence in the record.

First, with respect to the daily activities, the ALJ did not explain how the cited daily activities were inconsistent with Plaintiff's claim that he could only sit for thirty to sixty minutes at a time. His function report indicated he took short trips and his ability to do things depended on his pain level. (AR 287.) He reported that he would read, watch television, and play role-playing games and video games, but he stated that he did not do these things well and he did them on a limited basis due to his pain level and medications. (AR 289.) With respect to social activities, he stated that he would only go out for a short period of time, if he was able to go at all. (AR 290.) There were no questions posed to Plaintiff regarding how long he would sit when he would read, watch television, or play video games, or when he was engaged in social activities. Instead the record reveals only that he engaged in these activities on a limited basis with no detail as to how long he was able to sit at a time. Thus, the evidence in the record does not reflect an inconsistency between the daily activities and Plaintiff's claims regarding his ability to sit. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("a holistic review of the record does not reveal an inconsistency between the treating provider's opinions and Ghanim's daily activities").

Second, the court will turn to the objective medical evidence. Again, the ALJ found the medical evidence *did* support Plaintiff's assertion that his impairments limited his ability to work, but she concluded that there was insufficient evidence to support his contention that he was precluded from doing all work. The ALJ made no specific finding relative to Plaintiff's assertion that he could only sit for thirty to sixty minutes at a time being contradicted by the objective medical evidence. Nor did she point to any specific objective medical evidence that conflicted with his claim of how long he could sit.

The medical records reveal that Plaintiff consistently complained of worsening lumbar back pain with radicular features that eventually extended to the bilateral lower extremities, and he had started to experience some incontinence. Plaintiff had minimal relief from medication, injections, physical therapy, and acupuncture. His treating doctors often commented that his

1  ongoing symptoms limited his ability to function. He was prescribed a cane, and then later a
2  walker, which he used consistently, and his physician commented had helped. Despite his
3  complaints of worsening pain, the repeated requests of his treating doctors for a new MRI were
4  denied by worker's compensation. A review of the objective medical evidence does not reveal
5  anything that is an apparent contradiction of Plaintiff's claims relative to his ability to sit.

   In sum, the court agrees that the ALJ did not set forth clear and convincing reasons for finding Plaintiff less than credible insofar as he claimed he was limited in his ability to sit.

   Even crediting this testimony as true, there is a question as to whether the ALJ would be required to find Plaintiff disabled. "[A] finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" SSR 96-9P, at * 1. There would have to be a vocational assessment of whether there are jobs Plaintiff could still do despite a functional limitation of being able to sit only thirty to sixty minutes. *See id.* at * 4 ("There may be a number of occupations from the approximately 200 occupations administratively noticed, and jobs that exist in significant numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded."). This assessment would also need to address the assistive device topic discussed above. "Where there is more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that the individual is able to do other work, the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." *Id*. at * 5.

   Accordingly, this matter should be remanded for a determination of whether there is other work Plaintiff can perform that exists in significant numbers given his testimony consistent with these findings.

**3. Addresser Position & Significant Number of jobs.**

   Next, Plaintiff argues there is evidence set forth by SSA that the addresser position, as it exists in the DOT, is obsolete, and that the other jobs identified do not exist in significant numbers.

   The court need not address these arguments as remand has been recommended and the ALJ will need to consult a VE again to reassess whether there is other work Plaintiff can perform that

- 16 -

1 exists in significant numbers. Plaintiff's counsel should raise any questions regarding whether
2 substantial evidence supports the VE's testimony on this topic at that time.

**4. Remand**

Here, further administrative proceedings are necessary to determine whether other work exists in significant numbers if Plaintiff is restricted to a walker, and is limited to sitting for thirty to sixty minutes at a time. Therefore, remand for further proceedings is appropriate.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Plaintiff's motion, **DENYING** the Commissioner's cross-motion, and **REMANDING** this matter for further proceedings consistent with this Report and Recommendation.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: June 18, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE